UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO.
1:20-CV-11566-RWZ

ULTIMATE CLASSIC CONSTRUCTION INC.,
    Plaintiff
v.

BLACKBOARD SPECIALTY INSURANCE
COMPANY F/K/A HAMILTON SPECIALTY
INSURANCE COMPANY, YORK RISK SERVICES
GROUP, INC. AND SEDGWICK, INC.,
    Defendants

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' JOINT MOTION TO
SEVER AND STAY AND REQUEST FOR ORAL ARGUMENT

Now comes plaintiff ULTIMATE CLASSIC CONSTRUCTION INC. ("plaintiff") and

hereby submits this Memorandum in Opposition to Defendants' Joint Motion to Sever and Stay

Counts Two and Three of plaintiff's complaint.  Counts Two and Three set forth causes of action

for breach of the implied covenant of good faith and fair dealing and violations of c.93A

Sections 2 and 11 arising from, defendants' joint and several alleged multiple violations of

c.176D Section 3, Par. 9. Neither c. 93A nor c. 176D requires that the liability of the insured

party be determined before an unfair practices' claim against the insurer can be pursued. See

Mass. Gen. Laws c. 93A, § 9(1); Mass. Gen. Laws c. 176D, § 3(9).  Florczyk v. Round, No.

ESCV2006-00233B, 2006 WL 6105218 (Mass.Super. June 01, 2006). Cf. Clegg v. Butler, 424

Mass. 413, 418 (1997) (holding that  a third party claimant need not successfully litigate an

underlying claim by a third party as a requisite to filing a claim for bad faith insurance practices.

In general, the case law disfavors bifurcation, largely as a matter of judicial economy. In

the context of common law and related G.L.c. 93A claims, the Appeals Court has held that

"bifurcation of common law claim and c. 93A claim has little to commend it. Two trials result

1

instead of one, although the underlying facts and the witnesses are substantially the same." Wyler v. Bonnell Motors, Inc., 35 Mass.App.Ct. 563, 566 (1993). Rabelo v. Nasif, No. WOCV201102329C, 2012 WL 6970543, at *2–5 (Mass. Super. Dec. 27, 2012,Ferrara, J.). In Wyler, the SJC stated that  the reasons not to sever and stay are  largely pragmatic, relating to judicial economy and case management as when claims are severed, "[t]wo trials result instead of one," with the likelihood of some of the same witnesses testifying again to the same facts. Wyler, Supra at 566.

Unlike most situations where the insurance company sent out a denial of a claim which resulted in litigation,  *defendants never even  informed plaintiff as to whether they were admitting or denying coverage, despite receiving three c.93A demand letters*. (Complaint pars. 20,21 and 24). Cf. NextSun Energy Littleton, LLC v. Acadia Ins. Co., No. CV 18-11180-FDS, 2020 WL 5821630, at *16 (D. Mass. Sept. 30, 2020) (no evidence that defendant took any dishonest or deceitful actions to deprive plaintiff of the benefit of the policy where it denied plaintiff's claim in writing, without excessive delay, in a manner that allowed plaintiff to preserve its claims in this lawsuit).

Defendants' claim, that if the "coverage issue"  is resolved in favor of the defendants that would preclude liability of the Bad Faith Claims as a matter of law, is absolutely incorrect. It is based on case law addressing the appropriateness of staying discovery where a plaintiff's c.93A claim is solely based on alleged violation of c. 176D Section 3 Par. 9 (f)  whereas plaintiff's claim is based not only on Par. 9(f) but also on Par. 9 (b),(c) (d) (e),(g) and/or (n).

Par. 9 (f) states::

Unfair claim settlement practices: An unfair claim settlement practice shall consist of any of the following acts or omissions:

. . .

(f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

The case law defendants cite relies on the concept that if the insurer had not breached the contract of insurance, liability pursuant to Par. (9)(f) could not apply and thus the discovery on a c.93A relying on that provision could be stayed.  Although plaintiff believes that result would be inappropriate here, see infra, the Court need not even reach that argument to deny the defendants' motion.

Unlike in the cases cited by the defendants, plaintiff has also alleged in its Complaint causes of action pursuant to c.93A and breach of the covenant of good faith and fair dealing arising from defendants alleged breaches of Par. 9 (b),(c) (d) (e),(g) and/or (n) which state:

An unfair claim settlement practice shall consist of any of the following acts or omissions:

(b) Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies (Complaint, pars. 26 and 38)[1];

(c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies (Complaint par.39[2]);

(d) Refusing to pay claims without conducting a reasonable investigation based upon all available information;[3]

---

[1]      26.  From Friday, July 13, 2018 at which time the defendants acknowledged receiving the June 14, 2018 demand letter through July 1, 2020, the defendants and plaintiff's counsel have exchanged emails pursuant to which the defendants have continued to fail to issue either a written acknowledgement or denial of coverage or make any, never mind a reasonable offer of settlement.
         38.  Defendants have failed to acknowledge and act reasonably promptly upon communications with respect to claims arising under plaintiff's insurance policy.

[2]      39.  Defendants have failed to adopt and implement reasonable standards for the prompt investigation of plaintiff's claim arising under plaintiff's insurance policy.

[3]      Complaint, par. 14.

(e) Failing to affirm or deny coverage of claims within a reasonable time after proof of loss statements have been completed (Complaint par. 40)[4];

. . .

(g) Compelling insureds to institute litigation to recover amounts due under an insurance policy by offering substantially less than the amounts ultimately recovered in actions brought by such insureds (Complaint par. 42)[5]; . . .

or

(n) Failing to provide promptly a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.(Complaint, par. 43).[6]

Unlike par. 9(f), paragraphs 9 (b)-(e),(g)and (n) do not even arguably require the finding of a breach of contract as a prerequisite for finding a violation of c. 93A.

There is no requirement for liability to even exist under the contract of insurance for liability to exist for "bad faith" under any of these clauses (9 (b)-(e),(g)and (n)). Fernando v. Fed. Ins. Co., No. CV 18-10504-MBB, 2019 WL 2267168, at *14 (D. Mass. May 28, 2019) (the proposed amended complaint basis  the c. 93A claim on failing to conduct a reasonable investigation of the insurance claim, see Schwartz at 1043, which is a Par. 9prohibitive conduct that, "standing alone, would probably not constitute a breach of contractual obligations contained in the policy"); Morin v. Metro. Prop. & Cas. Ins. Co., No. CV 16-10687-LTS, 2016 WL 9053346, at *2 (D. Mass. June 7, 2016) (conduct of an insurer, regardless of whether it ultimately pays a claim, can result in liability under Chapter 176D (by way of Chapter 93A)).

---

[4]    40.   Defendants have failed to affirm or deny coverage of claims within a reasonable time after proof of loss statement had been completed.

[5]    42.   Defendants have compelled plaintiff to institute litigation to recover amounts due under plaintiff's insurance policy.

[6]    43.   Defendants have failed to provide promptly a reasonable explanation of the basis in the policy in relation to the facts or applicable law for denial of a claim or for the offer of a compromise settlement.
    44.   As a result of the defendants' joint and several failures to comply with their obligations set forth in c. 176D § 3(9), the plaintiff has incurred damages.

In <u>Ora Catering, Inc. v. Northland Ins. Co.</u>, 57 F. Supp. 3d 102, 109 (D. Mass. 2014), the court held that "Conduct prohibited by Chapter 176D is "not merely duplicative of ordinary breach of contract claims based on the [insurance] policy." <u>Schwartz v. Travelers Indem. Co.</u>, 50 Mass.App.Ct. 672, 740 N.E.2d 1039, 1042–43 (2001). Instead, engaging in the conduct prohibited by G.L. c. 176D, [which is] made unfair and deceptive by G.L. c. 93A [ ], creates an action independent from the contract. <u>Id.</u> at 1043."

The court in <u>Ora Catering</u> found that defendant's alleged violations of Chapters 93A and 176D were, in fact, claims predicated on conduct independent from plaintiff's other claims. As in <u>Ora Catering</u>, Plaintiff's allegations of misconduct by defendants are not a repackaging of its breach of contract claim under "the guise of a c. 93A violation," <u>Id</u>. citing <u>Schwartz</u>, <u>Supra</u> at 1043 n. 7, but rather allegations of defendants misconduct which "support activity, independent of a claim under the policy, that is violative of G.L. c. 176D. <u>See</u> <u>Berkshire-Cranwell Ltd. P'ship v. Tokio Marine & Nichido Fire Ins. Co.</u>, 874 F. Supp. 2d 41, 50 (D. Mass. 2012) (Per c. 176D, § 3(9)(d), an insurer must conduct a reasonable investigation before denying a claim and failure to do so is an unfair business practice under Mass. Gen. Laws. ch. 93A.). <u>Penton Media, Inc. v. Affiliated FM Ins. Co.</u>, 245 Fed. Appx. 495, 501 (6th Cir.2007) (bad faith in the adjustment of an insurance claim may exist without a valid claim for coverage as 'an insurer has a duty to act in good faith in the processing and payment of the claims of its insured. A breach of this duty will give rise to a cause of action in tort irrespective of any liability arising from breach of contract.') <u>quoting</u> <u>Athey v. Farmers Ins. Exchange</u>, 234 F.3d 357, 361–62 (8th Cir.2000) (affirming denial of motion to bifurcate bad-faith claim because insurer "had not shown that [the insured's] access to its claim files prejudiced its case"); <u>Light v. Allstate Ins.</u>

Co., 182 F.R.D. 210, 213 (S.D.W.Va.1998) (refusing to bifurcate bad-faith claim from the coverage claim).

In Eizen Fineburg & McCarthy, P.C. v. Ironshore Specialty Ins. Co., 319 F.R.D. 209, 212 (E.D. Pa. 2017), the court stated that although a bad faith claim based solely on an underlying breach of contract claim generally will fail if a court determines that an insurer did not have a duty to defend the insured based on the contractual agreement, "'the concept of 'bad faith'" can extend "beyond an insured's denial of a claim in several limited areas.'" Id. quoting Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005). "One of those areas concerns insurers that unreasonably delay the evaluation of their insureds' claims, even if the insurer's ultimate assessment of the claim proves to be correct." Wagner v. Allstate Ins. Co., No. 14-7326, 2016 WL 233790, at *3 (E.D. Pa. Jan. 19, 2016.;Rohm and Haas Co., 2008 WL 2517176, at *2(another area occurs "when the plaintiff's bad faith claim is based on more or other than just the insurance company's refusal to provide coverage.") .

Similarly, plaintiff's allegations of defendants' violations of 9(b)-(e), (g) and/or (n) support activity, independent of a claim under the policy that is violative of G.L.c. 176D.  As these claims are independent of the insurance policy, the relief defendants seek would promote inefficiency, inconvenience and would be prejudicial to the plaintiff as well as would not be conducive to judicial economy and require a second trial when none is necessary. Nuance Commc'ns, Inc. v. Omilia Nat. Language Sols., Ltd., No. CV 19-11438-PBS, 2020 WL 2198362, at *8 (D. Mass. May 6, 2020).  See Scotts Co. LLC v. Liberty Mut. Ins. Co., No. CIV A 2:06-CV-899, 2007 WL 2607555, at *1–2 (S.D. Ohio Sept. 5, 2007)(while courts are vested with virtually unlimited freedom to try the issues in the manner that trial convenience requires, a decision ordering bifurcation should be grounded in the facts and circumstances of each

case. <u>Saxion v. Titan-C-Mfg, Inc.</u>, 86 F.3d 553, 556 (6th Cir.1996); <u>In re Bendectin</u>

<u>Litigation</u>, 857 F.2d 290, 316 (6th Cir.1988)).

Adopting defendants' position would require reading out the other six indicia of bad faith

under c. 166D Section 3 Par. 9. As Par. 9 states: "Unfair claim settlement practices: An unfair

claim settlement practice shall consist *of any of* the following acts or omissions:".(Emphasis

added).  The statutory list of indicia of bad faith uses the disjunctive  "or" and not the

conjunctive "and". Indeed as each of the alternative indicia of bad faith are independent of a

finding of bad faith under Par. 9(f), there could be findings which found defendants liable under

one indicia of bad faith but not another. This would not result in inconsistent judgments as all

plaintiff has to do is successfully prove the existence of but one indicia of bad faith for a

violation of c. 93A pursuant to c. 176D to exist irrespective as to whether defendants breached

their contract.

Accordingly, allowing defendants' joint motion would lead to the opposite of "the just,

speedy and inexpensive determination of every action" and would be prejudicial to the plaintiff.

<u>Roddy & McNulty Ins. Agency v. AA Proctor & Co., Inc.</u>, 16 Mass. App. Ct. 525, 529 (1983);

<u>Butler v. Moore</u>, No. CIV. 10-10207-FDS, 2010 WL 4485937, at *1–2 (D. Mass. Nov. 8,

2010)(rejecting bifurcation motion as although it is true that bifurcation  could ultimately render

moot the issues of liability and damages, it appears more likely that bifurcation will lead to

inefficiency and impose a substantial burden on the Court and the parties).

Nor does a simultaneous trial of these distinct issues and claims necessarily create an

undue risk of jury confusion. <u>Rodriguez v. Alvelo</u>, <u>supra</u>. There is no right to a jury trial of a

G.L. c. 93A claim. <u>Nei v. Burley</u>, 388 Mass. 307, 315 (1983); <u>Deranian v. 128 Sales, Inc.</u>, 2002

Mass.App. Div. 175, 179. Thus, the unfair settlement claim under G.L. c. 93A is decided by the

trial judge, who is "capable of compartmentalizing [the] evidence" probative of the separate claims, Sanchez v. Witham, 2003 Mass.App. Div. 48, 49, and who may permissibly elect to find facts different from those determined by the jury on the underlying tort claim. Poly v. Moylan, 423 Mass. 141, 151; Guity v. Commerce Ins. Co., 36 Mass.App.Ct. 339, 340 (1994). See also Altschuler v. Lamond, 2006 Mass.App. Div. 141, 142.  Accordingly, the defendants' motion to sever Counts Two and Three until disposition of Count One must fail.

As to the stay of discovery, defendants contend that they are entitled to a stay of plaintiff's c. 93A claim until after the adjudication of the underlying contract claim to protect it from the irreparably prejudicial disclosure of confidential, privileged information contained in its claims file, including the work product of its agents and employees prepared in anticipation of litigation and attorney-client communications. As recognized by the court in Rurak v. Medical Professional Mut. Ins. Co., No. 02–12274–PBS (D.Mass.2003), there exists many unpublished appellate and trial court decisions  exist recognizing that while a stay is a "case management technique ... employed to obviate difficult attorney-client and work product issues," it is not the only procedural mechanism to protect privileged material. Rodriguez v. Alvelo, 2009 Mass. App. Div. 145 (Dist. Ct. 2009)( upheld the denial of the insurance company's motion to sever and stay the c. 93A  matter from the underlying tort claim recognizing that severance or bifurcation is neither the required, nor the automatically preferred, procedural approach, and that the issue remains one within the trial judge's discretion); Reardon v. Carter, No. SUCV200700098, 2007 WL 3261306, at *2–5 (Mass. Super. Apr. 2, 2007) (denying motion to sever and stay c. 93A and 176D count).  Those decisions recognize the familiar principle that a motion for a stay, or for any other discovery order, rests within the sound discretion of the trial court judge, Carr v. Howard, 426 Mass. 514, 528, 689 N.E.2d 1304 (1998), who is "in the best position to weigh

fairly the competing needs and interests of parties affected by discovery. Id.  A trial judge faced with a general motion to sever and stay a claim for unfair insurance practices pursuant to G.L. c. 93A, in the absence of any controlling legal authority to the contrary, has traditional judicial discretion to direct the "conduct and scope of discovery," Solimne v. B. Gravel & Co., KG, 399 Mass. 790, 799, 507 N.E.2d 662 (1987), and that the burden of proving an abuse of that discretion is on the insurance company, the party resisting discovery. Id.

Parties are entitled to discovery "regarding any matter, not privileged, that is relevant to the subject matter involved in the pending action." Mass. R. Civ. P. 26(b)(1). Relevancy is defined liberally to "encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Cronin v. Strayer, 392 Mass. 525, 534 (1984), quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). "Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of the action." Miller v. Doctor's Gen. Hosp., 76 F.R.D. 136, 139 (W.D.Okla.1977). Given the broad scope of discovery, Sullivan v. Chief Justice for Admin. & Mgt. of The Trial Court, 448 Mass. 15, 33 n. 11(2006), and the right of each party to compel the other to "disgorge whatever facts he has in his possession" not otherwise privileged or protected, Hickman v. Taylor, 329 U.S. 495, 507(1947), it is clear that the insurance companies' claims file would, at least in the first instance, be a proper target of plaintiff's G.L. c. 93A discovery efforts.

The defendants are not automatically entitled to an immediate, general stay of discovery based on nothing more than conclusory assertions of privilege and broad allegations of potential prejudice. Rodriguez v. Alvelo, 2009 Mass. App. Div. 145 (Dist. Ct. 2009). Not everything in an insurer's claims file is necessarily protected from discovery; there is no blanket, automatic

privilege that attaches to the claims file in its entirety. <u>Sham v. Hyannis Heritage House Hotel, Inc.</u>, 118 F.R.D. 24, 26 (D.Mass.1987) ( investigation conducted by defendant's insurer is in the ordinary course of business and is not shielded by Fed.R.Civ.P. 26(b)(3).)

The burden is on the insurance company, as the party resisting potential requests for relevant discovery, to identify the specific materials in the claims file that are allegedly privileged and to demonstrate that such materials were either work product created in anticipation of litigation within the protection of Mass. R. Civ. P. 26(b)(3), <u>Colonial Gas Co. v. Aetna Cas. & Sur. Co.</u>, 144 F.R.D. 600, 605 (D.Mass.1992), or attorney-client communications. <u>See generally Carr</u>, <u>supra</u> at 529, 689 N.E.2d 1304. The defendants have made no such showing in this case.  Defendants filed the present general motion shortly after filing their answer and after requesting an extension to respond to plaintiff's discovery.

Defendants have also failed to show that a stay of discovery on plaintiff's bad faith claims is warranted. <u>6515 MacCorkle, LLC v. Evanston Ins. Co.</u>, No. 2:20-CV-00253, 2020 WL 5824446, at *2–3 (S.D.W. Va. Sept. 30, 2020).; <u>Toler v. Gov't Employees Ins. Co.</u>, 309 F.R.D. 223, 225 (S.D.W. Va. 2015) (Goodwin, J) (courts have discretion to stay discovery until preliminary questions that may dispose of the case are determined "where claims may be dismissed 'based on legal determinations that could not have been altered by any further discovery."). <u>Pollard v. Wood</u>, No. CIV.A. 5:05-444-JMH, 2006 WL 782739, at *2 (E.D. Ky. Mar. 27, 2006)  (quoting <u>Muzquiz v. W.A. Foote Mem'l Hosp., Inc.</u>, 70 F.3d 422, 430 (6th Cir.1995)). Here, irrespective of whether the defendants are found to have breached the contract of insurance, plaintiff's bad faith claims also arising from the other indicia of bad faith <u>which are not contract driven</u> constitute legal determinations <u>which can be affected by further discovery</u>.

Thus a stay on discovery is inappropriate under the law and facts and defendants motion to stay discovery should be denied.

CONCLUSION

On the basis of the foregoing points and authorities plaintiff prays that this Honorable Court deny defendants' joint motion to sever and stay.

ULTIMATE CLASSIC CONSTRUCTION INC.
By its attorney,

/s/Alan M. Cohen_____
Alan M. Cohen BBO # 088375
Glenn Wegrzyn BBO # 676398
LAW OFFICES OF ALAN M. COHEN LLC
550 Worcester Road
Framingham, MA 01702
(508) 620-6900
acohen@collections-law.com

Certificate of Service

I, Alan M. Cohen, of the Law Offices of Alan M. Cohen LLC, do hereby certify that on the 26th day of January 2021,  a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by email to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF.

By: /s/Alan M. Cohen_____
Alan M. Cohen, Esquire